RHODES, APPELLEE, *v*. CITY OF NEW PHILADELPHIA, APPELLANT, ET AL.

[Cite as *Rhodes v. New Philadelphia*, 129 Ohio St.3d 304, 2011-Ohio-3279.]

*R.C. 149.351 — The destruction of a public record in violation of R.C. 149.351(A) gives rise to a forfeiture to any person who is "aggrieved" by the destruction — A party is not "aggrieved" by the destruction of a record when the party's objective in requesting the record is not to obtain the record but to seek a forfeiture for the wrongful destruction of the record.*

(No. 2010-0963 — Submitted April 20, 2011 — Decided July 7, 2011.)

APPEAL from the Court of Appeals for Tuscarawas County, No. 2009AP020013, 2010-Ohio-1730.

_____

**SYLLABUS OF THE COURT**

The destruction of a public record in violation of R.C. 149.351(A) gives rise to a forfeiture to any person who is "aggrieved" by the destruction.

_____

**MCGEE BROWN, J.**

**Introduction**

{¶ 1} The issue in this appeal is the meaning of the term "aggrieved" as it is used in R.C. 149.351.[1] The question presented is whether a party

_____

1. {¶ a} R.C. 149.351 states:

{¶ b} "(A) All records are the property of the public office concerned and shall not be removed, destroyed, mutilated, transferred, or otherwise damaged or disposed of, in whole or in part, except as provided by law or under the rules adopted by the records commissions provided for under sections 149.38 to 149.42 of the Revised Code or under the records programs established by the boards of trustees of state-supported institutions of higher education under section 149.33 of the Revised Code. Such records shall be delivered by outgoing officials and employees to their successors and shall not be otherwise removed, transferred, or destroyed unlawfully.

automatically becomes aggrieved as a matter of law when his request for a public record is denied due to an improper disposition of the record. We hold that a party is not aggrieved by the destruction of a record when the party's objective in requesting the record is not to obtain the record but to seek a forfeiture for the wrongful destruction of the record. We therefore reverse the judgment of the Fifth District Court of Appeals.

**Facts and Procedural History**

{¶ 2} Appellee, Timothy Rhodes, mailed a public-records request to the police department of appellant, city of New Philadelphia, in July 2007. Rhodes requested certain reel-to-reel tape recordings made by the police dispatch department through the use of a now-antiquated "Dictaphone-Dictatape Logger" system. Rhodes explained in his request that the reel-to-reel tapes recorded all the department's telephone calls and radio dispatches in 24-hour increments and that there should be one tape for every day of the year. He requested access to every one of those tapes created from 1975 through 1995. In his reply, the New Philadelphia chief of police explained that the department had disposed of the recordings.

{¶ 3} Rhodes made similar requests to the Tuscarawas County Sheriff's Office, the city of Uhrichsville, the village of Gates Mills, the city of Dover, the city of Wooster, the city of Solon, and the city of Medina. The reel-to-reel

---

{¶ c} "(B) Any person who is aggrieved by the removal, destruction, mutilation, or transfer of, or by other damage to or disposition of a record in violation of division (A) of this section, or by threat of such removal, destruction, mutilation, transfer, or other damage to or disposition of such a record, may commence either or both of the following in the court of common pleas of the county in which division (A) of this section allegedly was violated or is threatened to be violated:

{¶ d} "(1) A civil action for injunctive relief to compel compliance with division (A) of this section, and to obtain an award of the reasonable attorney's fees incurred by the person in the civil action;

{¶ e} "(2) A civil action to recover a forfeiture in the amount of one thousand dollars for each violation, and to obtain an award of the reasonable attorney's fees incurred by the person in the civil action."

recording system had long since been replaced. None of the public entities contacted by Rhodes had retained any of the old tapes or recorders, except for the city of Medina, which had preserved only a few tapes. Rhodes went to Medina to see what the reel-to-reel tapes looked like, but he did not request copies, transcripts, or a means to listen to the tapes.

{¶ 4} Except for New Philadelphia, all the above public entities had created record-retention schedules through their local records commissions and had obtained approval from the Ohio Historical Society and Ohio auditor of state to erase their reel-to-reel tapes after 30 days. See R.C. 149.39 (creating city records commissions to provide rules for retention and disposal of records). Upon finding that the New Philadelphia Police Department had, in violation of R.C. 149.351(A), erased the recordings from its reel-to-reel tapes 30 days after each recording was made,[2] Rhodes filed a complaint for civil forfeiture under R.C. 149.351(B). Rhodes stated in his complaint that New Philadelphia had acted unlawfully when it destroyed the recordings without the requisite approval, that he was aggrieved by New Philadelphia's violations, and that he was entitled to a $1,000 forfeiture for each improperly destroyed 24-hour recording.

{¶ 5} After both parties filed motions for summary judgment, the trial court determined that there remained a genuine issue of material fact as to the number of violations allegedly committed by New Philadelphia and as to whether Rhodes was actually aggrieved by the violations. The matter proceeded to trial before a jury.

{¶ 6} Rhodes testified that he had requested the tapes because he had planned to listen to them to see how the police department handled dispatch calls. On cross-examination, Rhodes admitted that in one of his letters to the city of

---

2. New Philadelphia had owned 30 or 31 reel-to-reel tapes in total, and the police department used the tapes on a rotating basis. After a tape had recorded for 24 hours, the department would remove the tape and replace it with another. The department retained each tape for 30 days and would then erase and reuse the tape.

Dover, he stated that he would like to request certain public records only if the city did not have an approved record-disposition schedule. In another one of his letters, Rhodes explained, "[A]s these records are very important to the timeline of the Dover Police Department's use of audio tapes in my research of your records disposal, I must request a right to view them."

{¶ 7} New Philadelphia argued that Rhodes was not an aggrieved party, because he did not actually want the records. Rhodes argued that his reason for requesting the records was immaterial because public entities are required by law to provide public records to any person who requests them. The trial court incorporated both parties' proposed definitions of "aggrieved person" into its instructions to the jury:

{¶ 8} "Black's Law Dictionary defines 'aggrieved' as '(Of a person or entity) having legal rights that are adversely affected; having been harmed by an infringement of legal rights.'

{¶ 9} "Under R.C. §149.351, 'a person is "aggrieved" where the improper disposition of a record infringes upon a person's legal right to scrutinize and evaluate a governmental decision.'

{¶ 10} "A person's right to access public records is a substantive right. A person does not have to establish a proper purpose or any purpose for seeking public records." (Footnotes omitted.)

{¶ 11} The jury entered a unanimous verdict in favor of New Philadelphia, finding that Rhodes had not been aggrieved by the unauthorized disposition of the requested public records.

{¶ 12} The Fifth District Court of Appeals reversed and remanded the matter for a new trial to determine the number of violations committed by New Philadelphia. The appellate court held that the trial court should have granted the portion of Rhodes's motion for summary judgment claiming that he was an aggrieved party and should not have allowed the issue to go to trial. The appellate

4

court held that aggrievement was not a factual issue to be determined by a jury, because "an aggrieved party is any member of the public who makes a lawful public records request and is denied those records." *Rhodes v. New Philadelphia*, 5th Dist. No. 2009AP020013, 2010-Ohio-1730, ¶ 32.

**{¶ 13}** We accepted discretionary jurisdiction over the appeal by New Philadelphia. *Rhodes v. New Philadelphia*, 126 Ohio St.3d 1581, 2010-Ohio-4542, 934 N.E.2d 354. New Philadelphia concedes that it is a public office pursuant to R.C. 149.011(A), that it had possessed certain reel-to-reel tapes in the past, that the reel-to-reel tapes were records pursuant to R.C. 149.011(G), and that the records were destroyed without an approved record-retention policy in place, in violation of R.C. 149.351(A). There is also no dispute that Rhodes made a written public-records request for the reel-to-reel tapes as provided in R.C. 149.43 and that New Philadelphia denied the request as a result of the improper destruction of the tapes. The sole issue presented is whether Rhodes was "aggrieved" by the destruction of the public records, as the term is used in R.C. 149.351(B).

**Analysis**

**{¶ 14}** Pursuant to the Ohio Public Records Act, public offices are obligated to make public records available in response to a request from any person. R.C. 149.43(B)(1) provides: "Upon request * * *, all public records responsive to the request shall be promptly prepared and made available for inspection to any person at all reasonable times during regular business hours." As one means of preventing the circumvention of Ohio Public Records Act, public offices are strictly prohibited from destroying or disposing of any of their records, unless permitted by law or by the rules adopted by the governing records commission and approved by the Ohio Historical Society and Ohio auditor of state. R.C. 149.351(A).

**{¶ 15}** Included in the statutory mechanisms for enforcing the act is a civil action for forfeiture. Pursuant to R.C. 149.351(B), "[a]ny person who is aggrieved by the removal, destruction, mutilation, or transfer of, or by other damage to or disposition of a record in violation of division (A) of this section" may bring a "civil action to recover a forfeiture in the amount of one thousand dollars for each violation, and to obtain an award of the reasonable attorney's fees incurred by the person in the civil action."

**{¶ 16}** Thus, in order for Rhodes to succeed in his civil action for forfeiture pursuant to R.C. 149.351, he must have requested public records, the public office must have been obligated to honor that request, subject to certain exceptions in R.C. 149.43(B), the office must have disposed of the public records in violation of R.C. 149.351(A), and Rhodes must be aggrieved by the improper disposal. However, the General Assembly did not provide a definition for the term "aggrieved" as it is used in R.C. 149.351(B).

**{¶ 17}** In order to understand a particular word used in a statute, a court is to read it in context and construe it according to the rules of grammar and common usage. R.C. 1.42. If, as here, a term is not defined in the statute, it should be accorded its plain and ordinary meaning. *Sharp v. Union Carbide Corp.* (1988), 38 Ohio St.3d 69, 70, 525 N.E.2d 1386.

**{¶ 18}** "Aggrieved" is commonly defined as "having legal rights that are adversely affected; having been harmed by an infringement of legal rights." Black's Law Dictionary (9th Ed.2009) 77. Thus, in order for Rhodes to be aggrieved, the improper conduct of New Philadelphia must have infringed upon Rhodes's legal rights. We must therefore look to the nature of the rights conferred and protected by the Public Records Act.

**{¶ 19}** The Ohio Public Records Act grants the "substantive right to inspect and copy public records." *State ex rel. Beacon Journal Publishing Co. v. Waters* (1993), 67 Ohio St.3d 321, 324, 617 N.E.2d 1110. In enacting the act, the

Ohio General Assembly sought to codify the right of the people of Ohio to observe their own government and scrutinize its decisions. *Kish v. Akron*, 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811, at ¶ 16-17. The purpose of providing public access to government documents and records "is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Natl. Labor Relations Bd. v. Robbins Tire & Rubber Co.* (1978), 437 U.S. 214, 242, 98 S.Ct. 2311, 57 L.Ed.2d 159. Thus, the act protects the general right of the people of Ohio to monitor the decisions of their own government through the more specific right to freely access public records.

{¶ 20} In construing R.C. 149.43(B), this court has consistently held that a public office is obligated to honor a records request by "any person" and that a person does not have to explain his or her reasons for wanting to inspect and copy a public record in order to validly request the record. *State ex rel. Fant v. Enright* (1993), 66 Ohio St.3d 186, 188, 610 N.E.2d 997; *Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, 821 N.E.2d 564, at ¶ 10. This protection is codified in R.C. 149.43(B)(4), which states that unless it is otherwise specifically permitted by law, "no public office or person responsible for public records may limit or condition the availability of public records by requiring disclosure of the requester's identity or the intended use of the requested public record."

{¶ 21} The broad language used in R.C. 149.43 manifests the General Assembly's intent to jealously protect the right of the people to access public records. We are acutely aware of the importance of the right provided by the act and the vulnerability of that right when the records are in the hands of public officials who are reluctant to release them. For this reason, we stress that public offices are obligated to honor public-record requests regardless of the requester's reasons for or objectives in requesting the records. Allowing the genuineness of a

person's request to be within the purview of the public office would invite recalcitrance and would not promote the purpose of the act.

{¶ 22} The duty imposed on public offices by R.C. 149.43(B) may sometimes result in wasted public funds because it obligates public offices to promptly reply to all requests, even frivolous requests. However, the General Assembly has balanced the public offices' interest in efficiency and fiscal integrity against the people's right to monitor their government, *Kish*, 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811, at ¶ 44, and has chosen to allow the risk of wasted funds. That choice is reflected in the expansiveness of the phrase "any person" in R.C. 149.43(B).

{¶ 23} The same choice is not reflected in R.C. 149.351, as the General Assembly did not make the enforcement mechanism of forfeiture available to "any person." Forfeiture is available only to a person who has been "aggrieved" by the public office's violation. R.C. 149.351(B). We must give effect to every term in a statute and avoid a construction that would render any provision meaningless, inoperative, or superfluous. *Boley v. Goodyear Tire & Rubber Co.*, 125 Ohio St.3d 510, 2010-Ohio-2550, 929 N.E.2d 448, at ¶ 21. We cannot ignore the General Assembly's use of the term "aggrieved," and we conclude that the General Assembly did not intend to impose a forfeiture when it can be proved that the requester's legal rights were not infringed, because the requester's only intent was to prove the nonexistence of the records.

{¶ 24} The requirement of aggrievement indicates that a forfeiture is not available to "any person" who has made a request and discovered that the records were not available due to the public office's violation of R.C. 149.351; it is available only to a person who had made a request with the goal of accessing the public records. If the goal is to seek a forfeiture, then the requester is not aggrieved. The presumption, however, is that a request for public records is made in order to access the records. This presumption is evident in other cases in which

8

this court has construed associated terms of the public-records act. See, e.g., *Kish v. Akron*, 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811; *State ex rel. Morgan v. New Lexington*, 112 Ohio St.3d 33, 2006-Ohio-6365, 857 N.E.2d 1208.

{¶ 25} In *Morgan*, this court held that the relator was entitled to access public records that related to her discharge from employment with the city of New Lexington due to her alleged falsification of official records and misappropriation of funds. Interpreting the phrase "any person," as used in R.C. 149.43, we held that neither the moral quality nor the purpose of the requester is relevant to the validity of her public-records request. Id. at ¶ 54. Even though the records related to her alleged malfeasance, and even though she may very well have wanted to use the records for a bad purpose, it is clear that the relator actually wanted the records. Likewise, in *Kish*, it is clear that the respondents actually wanted the requested records, which documented their unused compensatory time, so they could use them in their suit against their previous employer, the city of Akron. *Kish* at ¶ 6-8.

{¶ 26} Like the relator in Morgan, Rhodes was under no obligation to explain his reason for wanting the public records for his request to be valid. What distinguishes Rhodes's case from cases such as *Morgan* and *Kish* is the simple fact that Rhodes did not actually want the records.

{¶ 27} When a party requests access to public records with the specific desire for access to be denied, it cannot be said that the party is using the request in order to access public records; he is only feigning that intent. Here, Rhodes feigned his intent to access public records when his actual intent was to seek forfeiture awards. Consequently, the jury correctly concluded that Rhodes was not aggrieved by the destruction of the records he had requested. The trial court's denial of Rhodes's motion for summary judgment on the issue of aggrievement

and the entry of the jury's verdict in favor of New Philadelphia therefore did not contain reversible error.

**Conclusion**

{¶ 28} The destruction of a public record in violation of R.C. 149.351(A) gives rise to a forfeiture if the requester was "aggrieved" by the destruction. If a public office is able to establish that the requester did not actually want the records and instead wanted the request to be denied, then a finder of fact may conclude that the requester was not aggrieved by the destruction. New Philadelphia was able to establish through competent credible evidence that Rhodes's objective was not to obtain the records he requested but to receive notice that the records had been destroyed in violation of R.C. 149.351(A) so that he could seek forfeiture awards. Because Rhodes was not aggrieved by New Philadelphia's improper destruction of the recordings on its reel-to-reel tapes, we reverse the judgment of the Fifth District Court of Appeals.

Judgment reversed.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Craig T. Conley and William E. Walker Jr., for appellee.

Mazanec, Raskin & Ryder Co., L.P.A., John T. McLandrich, and Frank H. Scialdone, for appellant.

Edwin Davila, urging affirmance as a pro se amicus curiae.

Baker, Dublikar, Beck, Wiley & Mathews and Anthony E. Brown, urging reversal for amicus curiae Ohio Association of Civil Trial Attorneys.

Schottenstein, Zox & Dunn Co., L.P.A., Stephen L. Byron, Rebecca K. Schaltenbrand, and Stephen J. Smith, urging reversal for amicus curiae Ohio Municipal League.

Michael DeWine, Attorney General, Alexandra T. Schimmer, Solicitor General, and Laura Eddleman Heim, Deputy Solicitor, urging reversal for amicus curiae state of Ohio.

_____