[Cite as *State ex rel. Verhovec v. Marietta*, 2013-Ohio-5415.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO EX REL. | : | |
| DOROTHY VERHOVEC, | : | |
| | : | |
| Relator-Appellant, | : | |
| | : | Case No. 12CA32 |
| vs. | : | |
| | : | <u>DECISION AND</u> |
| THE CITY OF MARIETTA, et al., | : | <u>JUDGMENT ENTRY</u> |
| | : | |
| Respondents-Appellees. | : | RELEASED 12/04/2013 |

<u>APPEARANCES</u>:

William E. Walker, Jr., Massillon, Ohio, for Appellant.

C. Craig Woods, Squire Sanders (US) LLP, and Greta M. Kearns, Greta Kearns Law LLC, Columbus, Ohio, for Appellees.

Hoover, J.

{¶ 1} This appeal arises from the Washington County Common Pleas Court judgment entry awarding summary judgment in favor of respondents-appellees, the City of Marietta, Joe Matthews, and Walter Brothers[1], on relator-appellant, Dorothy Verhovec's petition for mandamus relief and civil forfeiture award under the Ohio Public Records Act. Appellant raises five assignments of error challenging the conclusion reached by the trial court in awarding summary judgment to appellees. Because four of the assignments of error are meritless, and because the remaining assignment of error constitutes harmless error, we affirm the judgment of the trial court.

---

[1] Respondents-appellees the City of Marietta, Joe Matthews (Mayor of Marietta), and Walter Brothers (President of Marietta City Council) are hereinafter collectively referred to as the "appellees."

I.

FACTS

*A.      The Public Record Requests*

{¶ 2} On August 21, 2010, appellant made a written public record request to Cathy Coppernol, the former Clerk of Council for the Marietta City Council. The request sought access to: (1) city council meeting minutes for each proceeding from January 1, 1990 to August 21, 2010; (2) draft meeting minutes that were handwritten by the Clerks of Council at each council meeting during the same time frame; and (3) any audio and video recordings made of those same meetings. This was the first of many public record requests made by appellant, and her husband, Edward Verhovec, to the City of Marietta. From August 21, 2010 to April 28, 2011, the Verhovecs made the following requests to the City of Marietta: (1) the aforementioned request for council meeting minutes, handwritten meeting notes, and audio/video recordings of council meetings; (2) a telephone request for the council minutes of the July 15, 1999 and August 5, 1999 council meetings and cable television survey results mentioned in the July 15, 1999 minutes; (3) a request for the Records Commission meeting minutes and rules from January 1, 1985 to January 7, 2011; (4) a second request for Records Commission meeting minutes; (5) a request for access to and copies of an Ohio Municipal League Letter addressed to the Marietta City Council dated June 1998 as well as letters sent or received between the council and the Ohio Municipal League between 1990 and February 15, 2011; (6) a second request for the June 1998 Ohio Municipal League Letter; (7) a request for access to and copies of all newsletters and bulletins sent to Marietta from the Ohio Municipal League from January 1, 1990 to April 15, 2011, as well as all documentation related to the membership and cancellation of the city's

subscription to the Ohio Municipal League bulletins and newsletters; and (8) a request for access to cable television survey data, including 3,285 cable survey cards with each card containing five questions, and the 16,424 separate responses and/or non-responses to each of the five questions contained on the cable survey cards.

### B.     The Cushion Contracts

{¶ 3}  The request at issue in the case sub judice – the August 21, 2010, request for the city council meeting minutes, handwritten draft minutes, and audio and video recordings of council meetings – was born out of an agreement between Edward Verhovec and Cleveland attorney Paul Cushion.  Mr. Verhovec testified at his deposition that he received a letter, out of the blue, from Cushion asking if he would be interested in obtaining public records for him from different cities throughout Ohio.  Mr. Verhovec subsequently entered into two contracts with Cushion to obtain from various cities either access to or copies of certain public records in exchange for payment of $1,000.00 to $4,000.00 per city.  In particular, the contract to obtain the Marietta City Council documents and recordings entitled Mr. Verhovec to $1,000.00 upon successful completion.  Attorney Cushion also provided Mr. Verhovec with form letters to request documents related to city council proceedings from Marietta, Uhrichsville, and Dennison; and red light camera images from Trotwood and Dayton.

{¶ 4}  Appellant initially testified at her deposition that she had "no idea" why she signed the letter requesting the city council documents and recordings from Marietta.  Later in her deposition, however, appellant testified that she signed the letter to help her husband because he was ill.  Appellant supposedly did not know and did not ask her husband why he wanted the

records.  Appellant also testified that she signed other public record request letters to help her husband but she had no idea why he was seeking the records.

C.      *The City's Response to the August 21, 2010 Request*

{¶ 5}  Appellees provided appellant with access to all the requested records that were in the city's possession; but admittedly, certain audiocassettes containing council meetings had been reused and the handwritten notes of the council meetings were not retained by the city.

D.      *The Lawsuit*

{¶ 6}  Following inspection of the records by appellant and her husband, appellant filed this lawsuit seeking both a writ of mandamus compelling appellees to provide access to all the requested records, and a civil forfeiture claim for every record that had been lost or destroyed.

E.      *Edward Verhovecs' Other Lawsuits*

{¶ 7}  In discovery it was revealed that the Verhovecs have made numerous other public record requests and have filed many other lawsuits in the state seeking civil forfeiture awards. For instance, Edward Verhovec testified at deposition that, in addition to the records sought from the City of Marietta, he had sought public records from the following six Ohio cities: Trotwood, Northwood, Springfield, Hamilton, South Euclid, and Dayton.  Mr. Verhovec has also filed lawsuits against Northwood, Springfield, Trotwood, and Dayton in connection to those requests. In each of those cases, Mr. Verhovec has been represented by attorney Walker.

{¶ 8}  Mr. Verhovec also brought a mandamus and civil forfeiture lawsuit against the City of Marietta in relation to his request for the cable survey cards and responses.  The claims in that case were also dismissed by the trial court.  That case is now the subject of a separate appeal

in this court.  *See State of Ohio ex rel. Edward Verhovec, et al. v. The City of Marietta, et al.*, 4th Dist. Washington Nos. 11CA29, 12CA52, 12CA53, 13CA1, and 13CA2.

*F.      Evidence of a State-Wide Scheme*

{¶ 9}  Appellees also presented evidence to the trial court suggesting that the Verhovecs' lawsuits are part of a larger, state-wide scheme involving several individuals seeking "windfall forfeiture awards" in connection to public record requests.  For instance, the appellees note that attorney Cushion is the named plaintiff in his own public records case in which he is represented by the Verhovecs' counsel, William E. Walker, Jr.  *See State ex rel. Cushion v. Massillon*, 5th Dist. Stark No. 2010CA00199, 2011-Ohio-4749.  The appellees have also identified a similar contract between attorney Cushion and Timothy Rhodes, pertaining to red light traffic photo enforcement records from the City of Chillicothe.  Mr. Rhodes testified at deposition that he was also solicited out of the blue by attorney Cushion to obtain those records.  The Rhodes-Cushion contract ultimately resulted in Rhodes filing a mandamus and civil forfeiture lawsuit against Chillicothe.  Notably, attorney Walker represented Rhodes in the Chillicothe lawsuit.[2]  Rhodes was also the relator in the Supreme Court of Ohio public records case, *Rhodes v. New Philadelphia*, 129 Ohio St.3d 304, 2011-Ohio-3279, 951 N.E.2d 782, in which he was represented by attorney Walker.

{¶ 10}  Edward Verhovec also testified at deposition that he solicited his nephew, James Verhovec, to send public record requests and to file lawsuits seeking civil forfeiture.  Letters that are virtually identical to the request at issue in the instant case, that were prepared by Edward Verhovec, but signed by James Verhovec, were sent to the city of Uhrichsville and the village of

---

[2]  The Chillicothe litigation recently came on appeal to this court.  *See State ex rel. Rhodes v. Chillicothe*, 4th Dist. Ross No. 12CA3333, 2013-Ohio-1858.

Dennison.[3]  Those requests eventually resulted in lawsuits, filed by attorney Walker, that are almost identical to this case.  *See State of Ohio ex rel. James Verhovec v. The Village of Dennison, et al.*, Tuscarawas County Common Pleas Court, No. 2011CV060708, and *State of Ohio ex rel. James Verhovec v. The City of Uhrichsville, et al.*, Tuscarawas County Common Pleas Court, No.2011CV060707.

{¶ 11}  Appellees have also identified numerous other lawsuits in the State of Ohio in which attorney Walker has represented individuals seeking civil forfeiture claims related to public records requests.  *See State ex rel. Davila v. Bellefontaine*, 3rd Dist. Logan No. 8-11-01, 2011-Ohio-4890; *State ex rel. Bell v. London*, 12th Dist. Madison Nos. CA2010-11-027, CA2010-11-029, 2011-Ohio-3914; *State ex rel. Davila v. Bucyrus*, 194 Ohio App.3d 325, 2011-Ohio-1731, 956 N.E.2d 332 (3rd Dist.); *State ex rel. Davila v. East Liverpool*, 7th Dist. Columbiana No. 10CO16, 2011-Ohio-1347.

G.       *The Trial Court's Summary Judgment Decisions and Judgment Entry*

{¶ 12}  In two separate decisions, the trial court granted summary judgment in favor of the appellees on each of appellant's claims.  On June 13, 2012, the trial court granted summary judgment on appellant's mandamus claim, noting that appellant's mandamus claim failed as a matter of law because the appellees' had produced all of the requested documents that it possessed and because appellant had failed to provide evidence that additional records exists.

{¶ 13}  The trial court issued a second decision awarding appellees summary judgment on appellant's civil forfeiture claim on June 29, 2012.  In that decision, the trial court determined that (1) all the meeting minutes and video recordings that ever existed had been provided by

---

[3] Edward Verhovec was to be paid $1,000.00 per city under his contract with Cushion, if he were able to obtain access to or copies of the council documents and recordings from Marietta, Uhrichsville, and Dennison.

appellees; (2) the handwritten meeting notes taken by the Clerks of Council during council meetings were not public records and thus could not support a forfeiture award; (3) appellant had failed to introduce evidence of which audio recordings of council meetings had not been provided in either cassette or VHS format; and (4) appellant was not "aggrieved" for purposes of a forfeiture claim because "the sole purpose of the requests is not to obtain the records but to obtain forfeiture for their wrongful destruction." The trial court based the fourth finding on the evidence of the alleged state-wide scheme involving Edward Verhovec, attorney Walker, attorney Cushion, and others. Specifically, the trial court noted the peculiar Cushion contracts, the connection between the parties, the nearly identical requests, the "lack of payment or rational action" under the Cushion contracts, and the filing of the similar lawsuits throughout the state by attorney Walker.

{¶ 14} On July 17, 2012, the trial court issued its final judgment entry dismissing all of appellant's claims.[4]

## II.

## ASSIGNMENTS OF ERROR

{¶ 15} Appellant raises five assignments of error for our review.

First Assignment of Error:

---

[4] After the filing of the final judgment entry, appellees moved for an award of fees and sanctions under R.C. 2323.51 and Civ.R. 11. While the motion for sanctions remained pending, appellant filed an original action in this court seeking a writ of prohibition to prevent the trial court from applying R.C. 2323.51 (*See State ex rel. Dorothy Verhovec v. Washington County Common Pleas Court, et al.*, 4th District Washington No. 12CA44). We dismissed appellant's original action on December 17, 2012, and appellant has appealed that dismissal to the Ohio Supreme Court. Meanwhile, the trial court granted appellees' motion for sanctions under R.C. 2323.51 and Civ.R. 11, and appellant has appealed that decision in a separate appeal. *See State of Ohio ex rel. Edward Verhovec, et al. v. The City of Marietta, et al.*, 4th Dist. Washington Nos. 11CA29, 12CA52, 12CA53, 13CA1, and 13CA2 (consolidated).

THE TRIAL COURT ERRED TO RELATOR'S PREJUDICE WHEN IT FOUND THAT CITY COUNCIL'S ORIGINAL MEETING MINUTES – THAT WERE STATUTORILY REQUIRED TO BE TAKEN AT ALL COUNCIL MEETINGS - WERE NOT PUBLIC RECORDS AND THEREFORE NOT SUBJECT TO THE PUBLIC RECORDS ACT.

Second Assignment of Error:

THE TRIAL COURT ERRED TO RELATOR'S PREJUDICE BY ENTERING SUMMARY JUDGMENT BASED UPON AFFIDAVITS THAT THE CITY USED TO CONTRADICT THEIR CIV. R. 30(B)(5) DESIGNEE'S DEPOSITION TESTIMONY BECAUSE THE CITY WAS OBLIGATED TO PREPARE THEIR DESIGNEE TO GIVE BINDING DEPOSITION TESTIMONY.

Third Assignment of Error:

THE TRIAL COURT ERRED TO APPELLANT'S PREJUDICE WHEN IT FOUND THAT APPELLANT COULD NOT OBTAIN JUDICIAL RELIEF UNDER THE PUBLIC RECORDS ACT BECAUSE OF HOW APPELLANT INTENDED TO USE THE RECORDS AFTER SHE OBTAINED THEM.

Fourth Assignment of Error:

THE TRIAL COURT ERRED TO APPELLANT'S PREJUDICE WHEN IT GRANTED SUMMARY JUDGMENT BY FINDING THAT CERTAIN VHS TAPES WERE AN ADEQUATE PUBLIC RECORDS SUBSTITUTE FOR AUDIO RECORDINGS EVEN WHEN THERE WAS EVIDENCE THAT THE VHS TAPES MAY NOT HAVE CONTAINED ALL OF THE REQUESTED RECORDINGS.

Fifth Assignment of Error:

THE TRIAL COURT ERRED TO APPELLANT'S PREJUDICE WHEN IT DENIED APPELLANT PUBLIC RECORDS RELIEF BY MAKING A FINDING THAT WAS BASED UPON THE STACKING OF ONE INFERENCE UPON ANOTHER WITHOUT ANY SEPARATE EVIDENCE SHOWING THE REQUEST WAS MADE FOR AN IMPROPER PURPOSE.


III.


THE STANDARD OF REVIEW

{¶ 16}  All of appellant's assignments of error challenge the trial court's decision to grant summary judgment in favor of appellees on her mandamus and forfeiture claims.  We review the trial court's decision on a motion for summary judgment de novo.  *Smith v. McBride*, 130 Ohio St.3d 51, 2011-Ohio-4674, 955 N.E.2d 954, ¶ 12.  Accordingly, we afford no deference to the trial court's decision and independently review the record and the inferences that can be drawn from it to determine whether summary judgment is appropriate.  *Harter v. Chillicothe Long-Term Care, Inc.*, 4th Dist. Ross No. 11CA3277, 2012-Ohio-2464, ¶ 12; *Grimes v. Grimes*, 4th Dist. Washington No. 08CA35, 2009-Ohio-3126, ¶ 16.

{¶ 17}  Summary judgment is appropriate only when the following have been established: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party.  Civ.R. 56(C); *DIRECTV, Inc. v. Levin*, 128 Ohio St.3d 68, 2010-Ohio-6279, 941 N.E.2d 1187, ¶ 15.  In ruling on a motion for summary judgment, the court must construe the record and all inferences therefrom in the nonmoving party's favor.  Civ.R. 56(C).  The party moving for summary judgment bears the initial burden to demonstrate that no genuine issues of material fact exist and that they are entitled to judgment in their favor as a matter of law.  *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996).  Once that burden is met, the nonmoving party then has a reciprocal burden to set forth specific facts to show that there is a genuine issue for trial.  *Id*.

IV.

LAW & ANALYSIS

{¶ 18}  Under the Ohio Public Records Act, public offices are required to make public records available in response to a request from any person.  R.C. 149.43(B)(1); *see also State ex rel. Rhodes v. Chillicothe*, 2013-Ohio-1858 at ¶ 39.  If the public office fails to make public records available upon request, and the requesting party "allegedly is aggrieved by the failure of a public office" to "promptly prepare a public record and to make it available to the person," then the requester may file a mandamus action seeking an order to compel the public office to make the records available.  R.C. 149.43(C)(1).  In addition, where the public office has destroyed or improperly disposed of public records, an "aggrieved" person can file an action for civil forfeiture and seek an award of damages.  R.C. 149.351(B).

A.       *Whether Handwritten Clerk of Council Notes are Public Records*

{¶ 19} In her first assignment of error, appellant contends that the trial court erred when it found that the handwritten notes taken by the Marietta Clerk of Council at council meetings were not public records subject to the Ohio Public Records Act.

{¶ 20}  Appellant's first assignment of error pertains to the trial court's June 29, 2012 decision, in which the court granted appellees' summary judgment on appellant's forfeiture claim.  In that decision, the trial court found that the handwritten notes were not public records, but rather they were personal notes taken solely for the Clerk of Council's convenience.   The trial court concluded that because the handwritten notes were not public records, the appellees failure to preserve them could not support appellant's forfeiture claim as a matter of law.

{¶ 21}  In order to recover damages under the civil forfeiture statute, the following must be met: (1) the requesting party must request *public records*; (2) the public office must be obligated to honor the request; (3) the office must have disposed of the records in violation of

R.C. 149.351(A); and (4) the requesting party must be aggrieved by the improper disposition. *State ex rel. Rhodes v. Chillicothe*, supra at ¶ 44, fn. 6, citing *Rhodes v. New Philadelphia*, 129 Ohio St.3d 304, 2011-Ohio-3279, 951 N.E.2d 782, at ¶ 16.

{¶ 22} A "public record" is any record that is kept by any public office. R.C. 149.43(A)(1). The Act defines "record" as "any document, device, or item, regardless of physical form or characteristic, including an electronic record as defined in section 1306.01 of the Revised Code, created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office." R.C. 149.011(G).

{¶ 23} A document may constitute a "record" for purposes of R.C. 149.43 even if it is not in its final form if it documents the organization, policies, functions, decisions, procedures, operations, or other activities of a public office. *State ex rel. Calvary v. Upper Arlington*, 89 Ohio St.3d 229, 232, 729 N.E.2d 1182 (2000); *Kish v. Akron*, 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811, ¶ 20.

{¶ 24} "[A]ny record that a government actor uses to document the organization, policies, functions, decisions, procedures, operations, or other activities of a public office can be classified reasonably as a record." *Kish* at ¶ 20, citing *State ex rel. Mothers Against Drunk Drivers v. Gosser*, 20 Ohio St.3d 30, 33, 485 N.E.2d 706 (1985); *see also State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office*, 133 Ohio St.3d 139, 2012-Ohio-4246, 976 N.E.2d 877, ¶ 33 (Calendars used, at least occasionally, to make work-related entries like hearing dates and deadlines for briefs are records for purposes of R.C. 149.011(G)).

{¶ 25} Generally a public official's personal notes made for his or her own convenience are not public records. *State ex rel. Cranford v. Cleveland*, 103 Ohio St.3d 196, 2004-Ohio-4884, 814 N.E.2d 1218, ¶ 17; *State ex rel. Steffen v. Kraft*, 67 Ohio St.3d 439, 439, 619 N.E.2d 688 (1993). However, audit drafts, working papers, and notes related to an audit of a public office are public records that are subject to disclosure under R.C. 149.43. *State ex rel. Gannett Satellite Information Network, Inc. v. Petro*, 80 Ohio St.3d 261, 264, 685 N.E.2d 1223 (1997).

{¶ 26} There is no duty pursuant to R.C. 149.43 to provide access to drafts of minutes that were presented to a board that are identical to the official minutes. *State ex rel. Doe v. Register*, 12th Dist. Clermont No. CA2008-08-081, 2009-Ohio-2448, ¶ 28.

{¶ 27} The documents at issue in this first assignment of error, referred to as the original meeting minutes by appellant in her brief, are essentially the handwritten notes that were taken by the Clerk of Council during each council meeting between January 1, 1990 and August 21, 2010. There were four Clerks of Council in the City of Marietta between January 1, 1990 and August 21, 2010, including: Vickie Todd f/k/a/ Dye (May 19, 1986-May 2, 1997), Ila Cox (April 29, 1997-May 8, 1998), Bonnie Duff (June 1, 1998-August 24, 2001), and Cathy Coppernoll (August 27, 2011-June 26, 2011). Generally speaking, each of these clerks took handwritten notes at each regularly scheduled council meeting. The clerks would use the notes as a "roadmap" or "cheat sheet" to aid in their preparation of the official minutes, which they typed following the meeting.

{¶ 28} The official typed version of the council minutes for each council meeting were approved at the following meeting. In the early 1990s, the clerk typed the official minutes into

the permanent minutes book containing the official record.  However, as technology advanced the minutes were typed on a computer.

{¶ 29}  Once the typed minutes were approved and became official at the next meeting, the handwritten notes were discarded.  Only four sets of handwritten notes from council meetings responsive to appellant's request were located by appellees.  Those handwritten notes have been provided to appellant.

{¶ 30}  Upon consideration of the above-cited case law, and the particular facts of this case, we conclude that the handwritten notes of the clerks are public records under the Act.  The clerks used the notes in their official capacity to aid in their preparation of the official minutes. They were not merely personal notes taken solely for their convenience as suggested by the trial court.  Rather, the notes were created to document the organization, functions, polices, decisions, procedures, operations, and other council activities.  Moreover, the handwritten notes are not identical to the official typed meeting minutes.

{¶ 31}  Nonetheless, while the trial court erred in determining that the handwritten notes were not public records, appellant must still be an "aggrieved" party to recover forfeiture damages.  For the reasons stated more fully below, we find that appellant is not an "aggrieved" party for the purposes of civil forfeiture relief.  Thus, appellant was not prejudiced by the trial court's errant determination that the handwritten notes were not public records.  Accordingly, appellant's first assignment of error is harmless error that we may disregard.  Civ.R. 61.

B.        *Whether the City of Marietta's Summary Judgment Affidavits*

          *Contradicted the Deposition Testimony of the City's Former Law*

          *Director Thus Creating A Factual Dispute Rendering Summary Judgment  Inappropriate*

{¶ 32} Appellant's second assignment of error relates to the trial court's dismissal of her mandamus claim. In awarding summary judgment in favor of the appellees on the mandamus claim, the trial court determined that appellees had produced all of the requested documents that it possessed. Appellant now contends, in her second assignment of error, that there is a conflict between the deposition testimony of the City's former law director, Roland Riggs III, and the affidavits of the current Clerk of Council, Theresa Taylor, that creates a factual dispute as to whether the appellees actually provided appellant with all the requested documents in its possession.

{¶ 33} It is well founded that one does not have a legal duty to provide records that are not in his or her possession or control. *State ex rel. Striker v. Smith*, 129 Ohio St.3d 168, 2011-Ohio-2878, 950 N.E.2d 952, ¶ 28, citing *State ex rel. Vitoratos v. Gross*, 24 Ohio St.2d 22, 23, 262 N.E.2d 864 (1970), and *State ex rel. Bradley v. Shannon*, 24 Ohio St.2d 115, 116, 265 N.E.2d 260 (1970). Moreover, there is no duty to create or provide access to nonexistent records. *State ex rel. Lanham v. Smith*, 112 Ohio St.3d 527, 2007-Ohio-609, 861 N.E.2d 530, ¶ 15, citing *State ex rel. Ohio Patrolmen's Benevolent Assn. v. Mentor*, 89 Ohio St.3d 440, 448, 732 N.E.2d 969 (2000).

{¶ 34} A mandamus claim is rendered moot when a relator has received all of the requested public records or has been given access to all of the records. *State ex rel. Cranford*, 103 Ohio St.3d 196, at ¶ 23, citing *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Info. Network, Inc. v. Dupuis*, 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶ 8; *Strothers v. Norton*, 131 Ohio St.3d 359, 2012-Ohio-1007, 965 N.E.2d 282, ¶ 13. Likewise, the Act does not impose a duty to create records that no longer exist. *State ex rel. Toledo Blade Co.*

*v. Seneca Cty. Bd. of Commrs.*, 120 Ohio St.3d 373, 2008-Ohio-6253, 899 N.E.2d 961, ¶ 27.

Therefore, a record that no longer exists cannot be obtained by mandamus. *Id.*

{¶ 35}  In the case sub judice, Mr. Riggs, the city's former law director, testified as the

city's Civ.R. 30(B)(5) designee.  Civ.R. 30(B)(5) requires an organization's representative to be

prepared to testify not only to matters known personally to the deponent, but also on subjects that

the organization should reasonably know.

{¶ 36}  At the Civ.R. 30(B)(5) deposition, Riggs was asked the following:

Q.  Okay.  Do you know – well, I'm going to ask you in your own personal.  Have

you ever seen any of the handwritten notes thrown away?

* * *

A.  No, I have not.

* * *

Q.  The handwritten notes, do you know if they still exist or not?  Do you have

personal knowledge of whether they still exist or not?

* * *

Q.  From the time frame 19 – I believe January 1, 1990, to August 2010.

A.  No.  I don't have personal knowledge of that.

{¶ 37}  Later, appellees' presented the affidavit and supplemental affidavit of Theresa

Taylor.  Taylor is the current Clerk of Council for the Marietta City Council.  Taylor stated in her

affidavits that she had diligently searched for any handwritten notes responsive to appellant's request, and had only been able to locate handwritten notes related to four separate council meetings.[5] Taylor further stated that no other handwritten notes responsive to appellant's request were in the possession of the appellees.

{¶ 38} Even more, appellant deposed all of the Clerks of Council, whose combined tenure spanned the entire period covered by appellant's request. Each clerk testified that they discarded their handwritten notes.

{¶ 39} In short, we fail to see any contradiction between the Riggs deposition, the Taylor affidavit, and the depositions of the clerks. Riggs simply testified that he did not know whether the handwritten notes still existed. He did not affirmatively say that they did still exist. This fact, coupled with the former clerks' testimony that they discarded the handwritten notes, and Taylor's affidavits stating that the notes could not be located after a diligent search, indicates that the appellees have provided all of the records in its possession. The trial court certainly did not err in concluding that no factual issues existed which would preclude summary judgment of the mandamus claim.

{¶ 40} Appellant also contends that as the city's Civ.R. 30(B)(5) representative, the appellees were bound by Riggs' testimony and could not later produce the Taylor affidavits which "proffer[ed] a new or different version" of the facts. Appellant argues that in order to avoid this consequence, the trial court improperly stripped Riggs of his representative capacity, and instead considered his testimony as if he were deposed personally. This argument fails for several reasons. First, the Taylor affidavits did not contradict Riggs' testimony. Rather, the affidavits served to supplement his testimony. Second, even if we were to assume, arguendo,

---

[5] Those handwritten notes have been provided to appellant.

that the trial court erred by "stripping" Riggs of his representative status, such error was invited by appellant when appellant's counsel specifically asked Riggs to limit his answers to his personal knowledge. "Under the invited-error doctrine, a party may not take advantage of an error that the party invited or induced the trial court to make." *Fifth Third Mtge., Co. v. Rankin*, 4th Dist. Pickaway No. 11CA18, 2012-Ohio-2804, ¶ 16, citing *State ex rel. Fowler v. Smith*, 68 Ohio St.3d 357, 359, 626 N.E.2d 950 (1994).

{¶ 41} Accordingly, appellant's second assignment of error is overruled.

*C.        Whether Appellant's Intended Use of the Requested Records Precluded Relief Under the Public Records Act*

{¶ 42} For her third assignment of error, appellant contends that the trial court erred in awarding summary judgment because it considered her intentions for requesting the records.

{¶ 43} In the context of a mandamus claim, the requester's motive is indeed irrelevant. *See New Philadelphia*, 129 Ohio St.3d 304, 2011-Ohio-3279, 951 N.E.2d 782, at ¶ 20 ("[A] public office is obligated to honor a records request by 'any person' and that a person does not have to explain his or her reasons for wanting to inspect and copy a public record in order to validity request the record."); *see also* R.C. 149.43(B)(4) (prohibiting public office from conditioning availability of records by requiring disclosure of the requestor's identity or purpose).

{¶ 44} In this case, however, appellant's mandamus claim was dismissed on summary judgment because the trial court determined that appellees fully complied with appellant's record request by providing all of the responsive records in its possession. Nowhere in the trial court's

mandamus decision is appellant's intended purpose discussed. Accordingly, appellant's third assignment of error is overruled as it pertains to the mandamus claim.

{¶ 45} While "any person" may make a public records request under R.C. 149.43(B), the Ohio Supreme Court has rejected the notion that "any person" can recover forfeiture under R.C. 149.351. *State ex rel. Rhodes v. Chillicothe*, 2013-Ohio-1858, at ¶ 43, *citing New Philadelphia* at ¶¶ 20, 23. "We cannot ignore the General Assembly's use of the term 'aggrieved,' and we conclude that the General Assembly did not intend to impose forfeiture when it can be proved that the requester's legal rights were not infringed, because the requester's only intent was to prove the nonexistence of the records." *New Philadelphia* at ¶ 23. Put another way, a person is aggrieved, and thus entitled to forfeiture if he "made a request with the goal of accessing the public records." *Id.* at ¶ 24. "If the goal is to seek a forfeiture, then the requester is not aggrieved." *Id.*

{¶ 46} It follows that in the instant case, appellant's intent is relevant in determining whether she was "aggrieved" for the purposes of her civil forfeiture claim. Appellant testified at her deposition that she signed the records request for her husband, because her husband had health issues that could have prevented him from inspecting the records. Edward Verhovec testified at his deposition that he wrote the letter requesting the records at issue because he wished to collect under his contract with attorney Cushion.

{¶ 47} The trial court ultimately determined that appellant was not "aggrieved" because "the sole purpose of the requests is not to obtain the records but to obtain forfeiture for their wrongful destruction." This determination was based, in part, on Edward Verhovec's pecuniary interest under the Cushion contract, as well as the evidence of Edward's numerous other lawsuits

filed throughout the state seeking forfeiture damages. Appellant argues that the trial court should not have considered the motives of her husband in deciding whether she was "aggrieved."

{¶ 48} The trial court concluded that is was proper to consider Edward Verhovec's motives because he was the real party in interest; not the appellant. In Ohio, "[e]very action shall be prosecuted in the name of the real party in interest." Civ.R. 17(A). A "real party in interest" is the " 'one who has a real interest in the subject matter of the litigation . . . one who is directly benefited or injured by the outcome of the case.' " *Shealy v. Campbell*, 20 Ohio St.3d 23, 24, 485 N.E.2d 701 (1985), *quoting West Clermont Edn. Assn. v. West Clermont Bd. of Edn.*, 67 Ohio App.2d 160, 162, 426 N.E.2d 512 (1st Dist.1980).

{¶ 49} We agree with the trial court's determination that Edward Verhovec, and not the appellant, was the real party in interest. Mr. Verhovec was a party to the contract with attorney Cushion. Mr. Verhovec wrote the letter requesting the documents at issue. The outcome of the requests would either directly benefit or directly injure Mr. Verhovec, not appellant. The appellant admittedly had no personal interests in the requested information. She had no idea why her husband wanted the records. She merely signed the forms provided by her husband.

{¶ 50} Accordingly, it was not improper for the trial court to consider the motives of the Verhovecs in awarding summary judgment to appellees on the forfeiture claim. Appellant's third assignment of error is overruled.

D.       *Whether the VHS Tapes Were an Adequate Substitute for the Audiocassette Recordings*

{¶ 51} For her fourth assignment of error, appellant contends that there are genuine issues of fact as to whether the VHS tapes of council meetings were an adequate substitute for the audiocassette recordings. Specifically, appellant argues that there is an issue of fact

concerning the sound quality of the VHS tapes.  Appellant further contends that such issue of fact necessitates reversal of the trial court's summary judgment award on her mandamus claim so that a show cause hearing can be conducted.

{¶ 52}  The city first started making audio recordings of council meetings in 1997.  From 1997 to 2008, the meetings were recorded on audiocassettes. However, during that time period the audiocassettes were reused, essentially erasing the earlier recordings.  In 2008, the Clerk of Council began archiving and labeling the audiocassettes, and they were no longer reused.  The trial court held that for purposes of the *civil forfeiture claim*, appellant was not "aggrieved" by the City's reuse of the audiocassettes because council meetings during that time were also recorded on VHS tapes, which contained an audio recording.

{¶ 53}  Now on appeal, appellant contends that summary judgment on her *mandamus claim* must be reversed because there is an issue of fact regarding whether the audio contained on the VHS tapes are actually audible.  Specifically, appellant testified at deposition that she could not hear the audio on many of the VHS tapes and that she did not know if the problem was with the tapes, or with the television set that she used to view the tapes.

{¶ 54}  It is apparent that appellant has confused the trial court's reasoning to dismiss the forfeiture claim, with its reasoning to dismiss the mandamus claim.  The trial court found that the VHS tapes were an adequate substitute for the purposes of the *forfeiture* claim.  That ruling had nothing to do with appellant's mandamus claim.  Rather, the trial court predicated its summary judgment award on the *mandamus* claim on the fact that appellees provided appellant with access to all of the audio and video recordings in its possession.  Accordingly, appellant's fourth assignment of error is overruled.

*E.        Whether There Exists Evidence to Support a Finding that Appellant is Not an*

*"Aggrieved" Person, and Thus Not Entitled to Forfeiture Awards*

{¶ 55}  Forfeiture is inappropriate when the requestor is not "aggrieved" by the improper

disposition of records – i.e. when it can be proved that the requester's only intent was to prove

the nonexistence of the records.  *New Philadelphia*, 129 Ohio St.3d 304, 2011-Ohio-3279, 951

N.E.2d 782, at ¶ 23.  For her fifth and final assignment of error, appellant contends that the trial

court erred when it allegedly stacked inference upon inference without any evidence to support

its conclusion that she was not "aggrieved" for purposes of civil forfeiture.

{¶ 56}  The trial court determined that appellant was not "aggrieved" because "the sole

purpose of [her] requests [were] not to obtain the records but to obtain forfeiture for their

wrongful destruction."  The trial court based its finding on "the [Cushion] contracts, the evidence

of connection, the identical types of requests, the identical forms used, the numerous suits, the

lack of payment or rational action under the Cushion contracts, [and] the filing of this suit, even

though the terms of the Cushion contract [had] been fulfilled * * *."

{¶ 57}  A trier of fact may not draw an inference based entirely upon another inference.

Rather an inference must rest upon a fact supported by evidence.  *State v. Cowans*, 87 Ohio St.3d

68, 78, 717 N.E.2d 298 (1999); *Estate of Holley v. Am. Family Life Assur. Co. of Columbus*, 4th

Dist. Pickaway No.04CA5, 2005-Ohio-2281, ¶¶ 25-29.

{¶ 58}  We have independently reviewed the record, and after construing the evidence in

the light most favorable to appellant, we similarly conclude that appellant was not "aggrieved"

and thus is not entitled to civil forfeiture damages.  Despite appellant's arguments, appellees

were able to establish through competent and credible evidence that the Verhovecs feigned their

intent to access the public records through the guise of the Cushion contract when their actual intent was to seek forfeiture awards.

{¶ 59} As mentioned above, we recently decided a case in which Timothy Rhodes, represented by attorney Walker, and pursuant to a contract with attorney Cushion, sought red light traffic images from the City of Chillicothe. *State ex rel. Rhodes v. Chillicothe*, supra. Like the appellant in this case, Rhodes filed an action for mandamus and civil forfeiture damages against the City of Chillicothe for the improper destruction of public records. In that case, we held that Rhodes was not an "aggrieved" party because he "did not have an interest in accessing the records[,]" but rather, he "simply sought payment, either under his contract with Mr. Cushion, or in the form of forfeiture." *Id*. at ¶ 44.

{¶ 60} Like *Rhodes*, all of the evidence in the instant case indicates an intent to cash-in on the civil forfeiture statute. For instance, the only explanation offered by the Verhovecs for requesting the records is Mr. Verhovec's contracts with attorney Cushion. Yet, Mr. Verhovec testified that he has never been paid under any of the Cushion contracts, and that he was unsure of what exactly needed to be produced in order to collect payment under the contracts. Moreover, Mr. Verhovec has filed numerous other lawsuits throughout the state seeking forfeiture damages. Absent the Cushion contracts, no logical explanation for these lawsuits exists. The Verhovecs' are not historians. They have never resided in the city of Marietta. In fact, Mr. Verhovec had never even heard of the Public Records Act prior to entering his contract with Cushion. Mr. Verhovec is also behind the lawsuits filed by his nephew, James Verhovec, against the village of Dennison and the City of Uhrichsville. Those lawsuits also seek significant forfeiture damages. We also cannot ignore the connections between Walker, the Verhovecs' counsel, and attorney Cushion, the contracting agent of the Cushion contracts. Attorney Walker

represented attorney Cushion in his very own civil forfeiture lawsuit. Attorney Walker also represented Timothy Rhodes in the Chillicothe lawsuit, in which Rhodes allegedly sought the records to fulfill his contract with Cushion. Finally, Walker represented James Verhovec in his lawsuits against Uhrichsville and Dennison.

{¶ 61} This lawsuit, the James Verhovec lawsuits, and the Timothy Rhodes Chillicothe lawsuit were all allegedly commenced so that the parties could retrieve the necessary documents required under the Cushion contracts. Both Rhodes and Edward Verhovec were allegedly contacted "out of the blue" by attorney Cushion; and while the Verhovecs' deny having a relationship with Rhodes both the Verhovecs' and Rhodes are represented by attorney Walker. Moreover, Walker has represented Cushion in Cushion's very own public records lawsuit. Based on the foregoing evidence, the trial court's conclusion that the appellant's true intent was to prove the nonexistence of the records so that the Verhovecs could collect the forfeiture awards is reasonable; and, it is a conclusion that we share with the trial court.[6]

{¶ 62} Moreover, the Verhovecs have disclaimed any interest in the records themselves, other than Mr. Verhovec's purported interest in collecting under the Cushion contract, and did not even bother to listen to the audio records that were provided by the city. These actions provide additional evidence that strongly indicates that the Verhovecs did not actually want the requested records, but instead, merely wanted proof that they did not exist and that the records had been destroyed or disposed of in violation of the civil forfeiture provision.

---

[6] At least one other Ohio court has alluded to a similar scheme involving Rhodes, and others. Represented by attorney Walker, and nicknamed the "Public Records Police," the Twelfth District Court of Appeals noted that the group "sought to become some of the highest paid 'police' in Ohio" through their forfeiture actions. *State ex rel. Bell v. London,* 2011-Ohio-3914 at ¶ 42 ("Bell, Davila, and Rhodes refer to themselves as the 'public records police,' and relying on the civil forfeiture provision in R.C. 149.351(B)(2) * * * have sought to become some of the highest paid 'police' in Ohio.").

{¶ 63} In sum, we conclude that the appellant had no interest in the requested records other than to build a case for forfeiture. This conclusion is based upon the competent credible evidence in the record demonstrating a contrived and concerted effort amongst the Verhovecs, attorney Walker, attorney Cushion, and others, to take advantage of the civil forfeiture statute for purely pecuniary gain. In light of the foregoing, the trial court properly concluded that appellant was not an "aggrieved" person for purposes of R.C. 149.351(B), and thus was not entitled to a civil forfeiture award. Appellant's fifth assignment of error is overruled.

V.

CONCLUSION

{¶ 64} For the foregoing reasons, appellant's second, third, fourth, and fifth assignments of error are overruled. In regards to appellant's first assignment of error, we hold that the trial court did error in determining that the handwritten Clerk of Council notes were not public records. However, in light of our other findings, particularly our finding that appellant was not "aggrieved," such error was harmless. Accordingly, the judgment entry of the trial court is affirmed.

JUDGMENT AFFIRMED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED.  Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J.:          Concurs in Judgment and Opinion as to Assignments of Error II, III, IV, and V.
                    Concurs in Judgment Only as to Assignment of Error I.
McFarland, P.J.:  Concurs in Judgment Only.


For the Court

By:
       Marie Hoover, Judge


**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.