[Cite as *Hunter v. Ohio Bur. of Workers' Comp.*, 2014-Ohio-5660.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

Doug Hunter, :

       Plaintiff-Appellant, :

               No. 13AP-457

v. : (C.P.C. No. 10CVD12-18858)

Ohio Bureau of Workers' Compensation : (REGULAR CALENDAR)
c/o Ohio Attorney General,

               :

       Defendant-Appellee. :

               :

---

## D E C I S I O N

### Rendered on December 23, 2014

---

*Einstein Law, LLC*, and *Dianne D. Einstein*, for appellant.

*Michael DeWine*, Attorney General, *Cheryl J. Nester*, and *Lydia M. Arko*, for appellee.

---

APPEAL from the Franklin County Court of Common Pleas.

BROWN, J.

{¶ 1} This is an appeal by plaintiff-appellant, Doug Hunter, from a judgment of the Franklin County Court of Common Pleas adopting a magistrate's decision finding in favor of defendant-appellee, Ohio Bureau of Workers' Compensation ("BWC"), on appellant's claims for forfeiture and spoliation of evidence.

{¶ 2} In December 1999, appellant began employment with BWC. In 2005, BWC appointed appellant to the position of fraud investigator in BWC's Special Investigations Unit ("SIU"), a part of BWC's Special Investigations Department ("SID"). BWC terminated appellant's employment July 20, 2010.

{¶ 3} On December 29, 2010, appellant filed a complaint against BWC asserting causes of action for forfeiture pursuant to R.C. 149.351 and spoliation of evidence. The complaint alleged that appellant made public records requests of BWC on February 25 and December 4, 2010, and January 3 and May 11, 2011, respectively, pursuant to R.C. 149.43, and that BWC had destroyed public records in contravention of R.C. 149.351. Appellant subsequently filed an amended complaint.

{¶ 4} A magistrate of the trial court conducted a bench trial beginning September 26, 2012. The magistrate rendered a decision on January 3, 2013, finding in favor of BWC. On January 17, 2013, appellant filed objections to the magistrate's decision; appellant filed supplemental objections on April 2, 2013. By decision and entry filed May 31, 2013, the trial court overruled appellant's objections and adopted the decision of the magistrate, finding in favor of BWC.

{¶ 5} On appeal, appellant sets forth the following five assignments of error for this court's review:

> 1. In this forfeiture case, the trial court erred when it failed to rule whether or not the BWC violated the public records law by failing to maintain the records of one of its former supervisors.
>
> 2. The trial court's conclusion that the BWC responded lawfully because another entity possessed the requested public records is not supported by the evidence or Ohio law.
>
> 3. The trial court erred when it held that Appellant should have followed up with the Labor Relations Division to receive records he requested from the BWC.
>
> 4. The trial court erred by finding that records on an investigation of Appellant on what occurred at a poker party were not public records because the same were not used by the BWC to discipline Hunter and that said records were transient and properly destroyed.
>
> 5. The trial court erred by holding that the records from all of the investigatory interviews of Hunter and other employees conducted by the BWC on whether Hunter violated BWC policy were transient, and thus, properly destroyed.

{¶ 6} Appellant's five assignments of error are interrelated and will be considered together. Under these assignments of error, appellant challenges the trial court's denial of his claim for civil forfeiture and, in particular, the rulings of the magistrate following the bench trial as to his public records requests relating to (1) BWC's investigation of an employee poker party, (2) investigatory interviews of appellant and two other BWC employees, and (3) discipline and grievance records kept by appellant's former supervisor.

{¶ 7} In order for appellant to succeed in a civil action for forfeiture, pursuant to R.C. 149.351, "he must have requested public records, the public office must have been obligated to honor that request, subject to certain exceptions in R.C. 149.43(B), the office must have disposed of the public records in violation of R.C. 149.351(A), and [he] must be aggrieved by the improper disposal." *Rhodes v. New Philadelphia,* 129 Ohio St.3d 304, 2011-Ohio-3279, ¶ 16.

{¶ 8} R.C. 149.351(A) states in part: "All records are the property of the public office concerned and shall not be removed, destroyed, mutilated, transferred, or otherwise damaged or disposed of, in whole or in part, except as provided by law or under the rules adopted by the records commissions." A "[p]ublic record" means "records kept by any public office," including a state office. R.C. 149.43(A)(1). Pursuant to R.C. 149.011(G), "[r]ecords" is defined to include "any document, device, or item, regardless of physical form or characteristic, including an electronic record * * * created or received by or coming under the jurisdiction of any public office of the state * * * which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office."

{¶ 9} At issue on appeal are three of the four records requests made by appellant to BWC. Specifically, appellant challenges the trial court's decision overruling his objections to determinations by the magistrate with respect to records requests he made to BWC on February 25, 2010, and January 3 and May 11, 2011.

{¶ 10} We first address the trial court's ruling as to appellant's February 25, 2010 records request for documents relating to BWC's inquiry of events surrounding a poker party involving BWC employees. By way of background, the evidence presented at trial before the magistrate indicates that Shawn Fox, special agent in charge of BWC fraud investigations in western Ohio, became aware in 2010 of alleged comments made by

appellant during a poker game attended by several BWC employees. More specifically, according to testimony by Fox, BWC employee Darrin Booker informed another employee, Craig Thompson, that appellant "was at poker parties bragging about going to the media on a recent disciplinary case," and that appellant "was threatening to go to the media on some issues." (Tr. 214.) Thompson related that information to Fox. Following this conversation, Fox spoke with Brad Nielson, a BWC labor relations officer, about how to proceed in addressing a potential violation of agency policy. Nielson advised Fox to question attendees of the poker party to ascertain "if there is any truth to it," and "if there is, then we'll open up an investigation." (Tr. 215-16.)

{¶ 11} Fox subsequently questioned several individuals, including BWC employees Booker and Amy Hoops who had attended an after work poker game, and made handwritten notes of the conversations. On January 27, 2010, Jennifer Saunders, assistant director of investigation for SIU, and Kim Pandilidis, an assistant special agent for SIU, interviewed appellant; during this interview, they asked appellant questions about the poker party, and also questioned him about a separate matter regarding his alleged involvement in a verbal altercation. Saunders and Pandilidis took handwritten notes during their interview with appellant. Based on these discussions, Fox determined that "[n]othing occurred," that "nothing was told to anybody, there was no reason to move forward, it had no value to us." (Tr. 216.) Fox reported his findings to Nielson, and Nielson made the decision to not move forward with a full investigation. The handwritten notes of the interviewers were subsequently destroyed.

{¶ 12} On February 25, 2010, appellant sent an e-mail to Nielson, requesting in part "[a]ll correspondence, notes, allegations or any other written documentation and name of Source who BWC received information about comments and discussions which involved the BWC at Poker Games that I attended and lead to the interview questions regarding this poker game." In response to this request, appellant received copies of e-mails with respect to the investigation, as well as a copy of the typewritten questions prepared for the oral interviews.

{¶ 13} On June 29, 2010, Monique Hall, the BWC's public records manager, sent appellant an e-mail, stating in part:

> With regard to your request for the name of the alleged source
> involved in this investigation, whether or not personnel have

knowledge of this person's identity, BWC does not have the name of the source in a recorded format that could be provided to you as a record in response to your request. Accordingly, we are unable to provide you this information.

Your second question was in regards to the retention of handwritten notes from investigative interviews. The practice of discarding handwritten notes from interviews is a standard practice within SID, and is addressed in department policy. The practice is consistent with the retention schedule for transient documents (documents of temporary importance): The handwritten notes are kept for a limited period – until it is determined that the notes no longer have administrative value or usefulness – and then destroyed. In this case, once it was determined that there would be no resulting discipline in connection or as a result of the interview, there was no value in retaining the notes. The notes were subsequently destroyed pursuant to applicable policy.

{¶ 14} The magistrate, in addressing appellant's February 25, 2010 public records request, held that the purported documents were not public records and/or were not improperly destroyed. In so holding, the magistrate rejected appellant's contention that, "because Fox shared the information with Brad Nielson of the BWC, *who presumably used these records* to decide not to discipline plaintiff, the documents thus qualify as public records." (Emphasis sic.) The magistrate concluded "it was not the physical documents that served as a source of reliance for the decision not to proceed further and open an investigation." Rather, the BWC relied on the oral report of Fox to Nielson in determining "that nothing of interest was uncovered."

{¶ 15} The magistrate alternatively held that "even if it is possible to conclude that the records constitute public records, they were not improperly destroyed." Specifically, the magistrate found the documents were "precursor writings whose value was of temporary duration," and that their value "was rendered nugatory upon the decision that an investigation not be opened to explore the subject further." The magistrate further determined that the records "were then destroyed in accordance with the retention schedule (GAR-CM-05) for transient documents."

{¶ 16} With respect to appellant's request for all "notes" related to the poker games, we find no error with the magistrate's determination that the handwritten notes taken by BWC investigators regarding their discussions with appellant and BWC

employees Booker and Hoops do not constitute public records. Under Ohio law, the general rule is that "a public official's personal notes made for his or her own convenience are not public records." *State ex rel. Verhovec v. Marietta,* 4th Dist. No. 12CA32, 2013-Ohio-5415, ¶ 25, citing *State ex rel. Cranford v. Cleveland,* 103 Ohio St.3d 196, 2004-Ohio-4884.

{¶ 17} In the instant case, the evidence indicates that the notes taken by the interviewers were for their personal convenience, used by the authors to assist them in their duties, and not kept as official records. While Fox testified that he referenced his notes in a follow-up conversation with Nielson, Fox did not share the notes with Nielson, nor did he circulate the notes to others. Here, in addition to the magistrate's factual finding that the agency did not rely on the notes at issue in deciding to forgo any formal investigation as to alleged statements by appellant, the record supports a determination that the handwritten notes were for the interviewers' personal use and convenience, and we agree with the magistrate that such documents do not constitute public records subject to disclosure under R.C. 149.43. *See Cranford.*

{¶ 18} As part of his February 25, 2010 records request, appellant also sought any written documentation regarding the "name of [the] Source" who provided BWC with information about comments and discussions made at BWC poker games. In response to this request, Hall sent appellant an e-mail informing him that "BWC did not have the name of the source in a recorded format that could be provided to him as a record in response to the request." (Tr. 408.) At trial, Hall testified "[t]here was not a record" in response to that request. (Tr. 408.) Thus, the evidence before the trier of fact indicated that no written document existed naming the source sought by appellant. Because the record sought did not exist, the agency was under "no clear duty to create such a record." *State ex rel. Welden v. Ohio State Med. Bd.,* 10th Dist. No. 11AP-139, 2011-Ohio-6560, ¶ 9, citing *State ex rel. White v. Goldsberry,* 85 Ohio St.3d 153, 154 (1999). Accordingly, the trial court did not err in overruling appellant's objections relating to the February 25, 2010 records request.

{¶ 19} We next address appellant's challenge to the trial court's ruling on his January 3, 2011 records request in which he sought documents regarding questions posed to him, and answers he provided, during BWC investigatory interviews conducted on

January 27 and June 22, 2010. Also at issue are documents appellant requested relating to investigatory interviews of BWC employees Beverly Hasty and Rebecca Roach conducted on June 24, 2010.

{¶ 20} We note the following factual background surrounding the BWC investigatory interviews conducted in June 2010. In March 2010, the Office of the Inspector General ("OIG") initiated an investigation of allegations that certain BWC employees, including appellant, had mishandled evidence and made false statements arising out of a 2008 BWC fraud investigation ("the 2008 fraud investigation"). More specifically, in 2008, BWC assigned appellant and two other individuals, BWC fraud analysts Roach and Hasty, to investigate allegations that an individual was operating a karaoke business while receiving workers' compensation benefits. The investigators conducted an undercover operation and collected evidence. BWC was subsequently unable to locate evidence collected by those investigators as part of the 2008 fraud investigation.

{¶ 21} OIG issued a report on May 27, 2010, finding in part that appellant and Roach, after collecting evidence during the 2008 fraud investigation, "then failed to follow appropriate and required procedures for handling the evidence." OIG concluded that, "[b]ecause of the errors, the agency is left without valuable evidence that could be used at trial or in other proceedings." (OIG Report at 6.) The OIG report recommended that BWC "take the appropriate administrative action to address the actions of Fraud Investigator Douglas Hunter and Fraud Analyst Rebecca Roach." (OIG Report at 6.)

{¶ 22} Following OIG's investigation and findings, BWC, through the SIU, initiated its own investigation as to the allegations contained in the OIG report of missing evidence and lack of documentation. On June 22, 2010, Fox and Saunders interviewed appellant regarding the 2008 fraud investigation. On June 24, 2010, Fox and Saunders conducted investigatory interviews with Hasty and Roach. Following appellant's June 22, 2010 interview, BWC suspended appellant with pay pending a pre-disciplinary hearing. At trial, Fox testified that BWC subsequently terminated appellant's employment on grounds of dishonesty and mishandling of evidence arising out of the OIG investigation.

{¶ 23} On January 3, 2011, appellant submitted a public records request which included a request for documents containing the list of questions, "handwritten and/or

typed," and answers related to the June 2010 investigatory interviews of appellant, Roach, and Hasty, arising out of the 2008 fraud investigation. As part of this request, appellant sought the "handwritten record" of the answers prepared by the interviewers "used to prepare the typed investigatory interview." Appellant also sought all documents "containing the list of questions (handwritten and/or typed) that Kim Pandilidis and Jennifer Saunders asked Doug Hunter during the investigatory interview" conducted on January 27, 2010.[1] In response to this request, BWC provided appellant various documents, including the typewritten reports pertaining to the interviews at issue.

{¶ 24} At trial, the parties raised competing arguments with respect to whether the records at issue were subject to BWC's retention schedule for transient records, as argued by BWC, or whether they were subject to BWC's retention schedule for "Employee Discipline and Grievance Records" as urged by appellant. The magistrate, in addressing appellant's January 3, 2011 records request, found persuasive BWC's interpretation of its rules and determined that the agency properly disposed of the handwritten interview notes as transient records in accordance with its records retention schedule.

{¶ 25} Appellant challenges the magistrate's determination that the handwritten records were transient. Specifically, appellant argues that the applicable BWC records retention schedule was for Employee Discipline and Grievance Records, which he asserts required BWC to retain the handwritten notes for seven years.

{¶ 26} In response, BWC argues the handwritten notes by the interviewers were not public records; rather, it asserts, the interviewers used the notes to assist them in creating the transcribed report of the interview, which became the official record of the office and which BWC provided to appellant as part of his records request.

{¶ 27} The evidence at trial indicates that two interviewers were always present during each of the June 2010 interviews conducted by SIU with the three interviewees (appellant, Roach, and Hasty). A union steward was also present at each interview. Both interviewers took their own handwritten notes. Later, the interviewers verbally compared responses from their notes and prepared a typewritten report of the interview; each interviewer subsequently destroyed their own handwritten notes. In response to his

---

[1] As previously noted, BWC employees Saunders and Pandilidis conducted an interview of appellant on January 27, 2010. During that interview, they questioned appellant regarding an alleged verbal altercation involving appellant at a BWC office in Lima.

records request, appellant received copies of the typewritten reports documenting his interviews on January 27 and June 22, 2010, as well as the typewritten reports prepared following the interviews of Roach and Hasty conducted on June 24, 2010.

{¶ 28} At trial, the magistrate heard testimony regarding the agency's policy for disposing of interview notes as part of an investigatory interview. Specifically, Fox testified that SIU's "established practice" in handling an investigation is to "memorialize in one document what occurred," and then "our notes are destroyed." (Tr. 175.) Fox stated that the practice followed by the interviewers during the investigatory interviews with appellant, Roach, and Hasty was in accordance with SIU policy. Fox related that both interviewers took notes during the interviews, and that the interviewers subsequently "talked and compared verbally" in the course of preparing the typewritten report. (Tr. 230.) Fox testified that BWC's policy requires consistency with respect to keeping or destroying notes; Fox noted that he "always destroy[s]" his notes. (Tr. 233.)

{¶ 29} Similar to the testimony of Fox, BWC employees Pandilidis and Saunders testified that they followed SIU policy in shredding the handwritten notes following the interviews. Saunders, who shredded her personal notes after the "final document" was prepared, explained that "[o]nce I was finished with them, they were * * * no longer of administrative value to me * * *. And per policy we always shred them or we always keep them." (Tr. 308.)

{¶ 30} At trial, a copy of SIU's policy regarding interview procedures was admitted into evidence; that document provides in part:

> It is the policy of each investigative unit to conduct subject interviews with two BWC investigative employees present. * * * The interview will be conducted with a primary and secondary interviewer. The secondary interviewer will be accountable for keeping detailed notes of the interview. A permanent record of the interview will be kept denoting any out of the ordinary event or occurrence in the interview setting. The primary interviewer will be responsible for authoring the required interview memo outlining pertinent facts of the interview and to supplement the notes taken by the secondary interviewer. After the permanent record has been established, the agent may destroy his/her notes or include them in the SK file. The agent must be consistent with the disposition of his/her notes – destroy all notes for all cases or include notes in the SK file for all cases.

{¶ 31} As previously discussed, the general rule is that personal notes are not public records subject to disclosure. *See, e.g., Cranford*; *State ex rel. Mun. Constr. Equip. Operators' Labor Council v. Cleveland,* 8th Dist. No. 83057, 2004-Ohio-1261, ¶ 10 ("the handwritten personal notes of a public employee or official are not public records").  In the instant case, appellant argued before the trial court that the handwritten notes were public records because the interviewers used their notes to create the final typewritten document.  However, the fact that notes taken by the interviewers may have pertained to work of the agency is not dispositive. *See, e.g., State ex rel. Steffen v. Kraft,* 67 Ohio St.3d 439, 440 (1993) (noting "Federal Courts have * * * recognized that personal uncirculated handwritten notes reflecting an employee's impression of substantive discussions and agency business meetings are not 'agency records' ").

{¶ 32} In *Cranford,* the appellant-employee appealed the appellee-city's termination of his employment asserting that a city official's personal notes from a pre-disciplinary conference, which included questions asked and answers provided, should have been disclosed as part of the employee's public records request.  The Supreme Court of Ohio rejected the appellant's argument holding that the official's personal notes were "not public records subject to disclosure under R.C. 149.43." *Id.* at ¶ 21.  The court in *Cranford* observed that its conclusion "is consistent with courts of other jurisdictions holding that personal notes of public officials generally do not constitute public records." *Id.* at ¶ 22.

{¶ 33} In *Cranford,* the court cited with approval the decision in *State ex rel. Murray v. Netting,* 5th Dist. No. 97-CA-24 (Sept. 18, 1998), in which the relator, an unsuccessful candidate for office, filed a public records request for various documents relating to the hiring process of the chief of police of a municipality.  Among the documents requested were handwritten notes evaluating candidates during the interview process; the interviewers subsequently relied on the handwritten notes to complete the evaluation forms.  While the court in *Murray* noted that the relator was entitled to the evaluation forms of each candidate, the court further determined that the handwritten notes, which were the personal papers of the interviewers, were not public records as defined by R.C. 149.43.

{¶ 34} In *Barnes v. Columbus Civ. Serv. Comm.,* 10th Dist. No. 10AP-637, 2011-Ohio-2808, this court held that personal notes taken by assessors, used to recall relevant factors observed during a candidate's promotional examination and to assist the assessor in completing a score sheet, did not constitute public records. The appellants in *Barnes* asserted in part that the assessors' notes qualified as public records because the assessors relied on them to complete the final score sheets. In finding the appellants' argument unpersuasive, this court cited both *Cranford* and *Murray* as "prior personal note cases" in which "the notes at issue related to a matter upon which the note taker was charged with making a decision or aiding in the decision-making process." *Barnes* at ¶ 24.

{¶ 35} Upon review, we agree with BWC's contention that the handwritten interview notes do not constitute public records. As indicated, two interviewers questioned each individual, and both interviewers took handwritten notes of the responses. According to Fox, after the interviews were conducted, the two interviewers "talked and compared verbally" the responses, and then prepared a typewritten report. (Tr. 230.) Here, the evidence indicates that the handwritten notes by the interviewers were materials used to assist them in recalling the responses during the interviews and to facilitate their preparation of the transcribed reports (i.e., the official record), copies of which appellant received as part of his records request. *See, e.g.*, *Barnes*; *Murray*. *See also Silberstein v. Montgomery Cty. Community College Dist.,* 2d Dist. No. 23439, 2009-Ohio-6138 (holding that personal notes of hiring committee members made on interview question forms were not public records, and that the appellee did not violate R.C. 149.351 by disposing of the notes following the interviews).

{¶ 36} Based on the evidence presented, we conclude that the trial court did not err in adopting the magistrate's determination that the agency acted in accordance with its policy, and was permitted to destroy the handwritten notes. Accordingly, the trial court did not err in denying appellant's forfeiture claim as to his January 3, 2011 records request.

{¶ 37} The final request at issue involves appellant's May 11, 2011 request for records maintained by former BWC employee Ken Featherling. Under this request, appellant sought "[a]ll BWC employee discipline records maintained by Ken Featherling in his office at the Governor[']s Hill Service Office," as well as "[a]ll BWC

employee/employer grievance records maintained by Ken Featherling in his office at the Governor[']s Hill Service Office."

{¶ 38} In response to that request, Hall sent appellant correspondence on June 27, 2011, stating in part:

> This communication is in response to your request for all BWC employee discipline records and employee/employer grievance records maintained by Ken Featherling in his office at the Governors Hill Service Office.
>
> As you are probably aware, Ken Featherling has not been employed with BWC since 2008. BWC does not maintain copies of any discipline or grievance records that would have been separately or independently maintained by Ken Featherling. Discipline and grievance records are maintained by the BWC Labor Relations Division of the Human Resources Department and/or the Union. If you would like to request specific discipline records, please let me know and I will work with Labor Relations to have your request expedited.

{¶ 39} At trial, Hall presented testimony regarding the agency's response to appellant's May 11, 2011 request for all BWC employee discipline and grievance records maintained by former BWC employee Featherling. The evidence indicated that Featherling left his employment with BWC in 2008, and Hall cited difficulties in responding to a request for records kept by a former employee dating back several years, noting: "We may be able to do that * * * if we are aware of the specific note, if there is a request for a very specific document." (Tr. 421.) Hall stated that appellant's request, "seeking all grievance records or all discipline records that an employee may have had," presented issues based on the "overly broad" nature of the request. (Tr. 414.) According to Hall, a "request should identify the records with reasonable clarity," including "an indication as to the individual involved in the discipline or grievance records." (Tr. 421-22.) Hall further testified as to the agency's correspondence in response to appellant's request, noting that the e-mail informed him that discipline and grievance records were "maintained by the BWC labor relations division of the Human Resources Department," and offering to assist appellant if he "would like to request specific discipline records." (Tr. 413.) When asked whether appellant ever made a follow-up request identifying

specific discipline records, as referenced in Hall's June 27, 2011 correspondence, Hall responded: "Not that I can recall." (Tr. 415.)

{¶ 40} The magistrate, in addressing this request, cited evidence that BWC "responded to plaintiff's request and indicated that it did not possess the requested records." Further, BWC's "response informed plaintiff of the entity that would possess the records and offered to give him a hand in obtaining the records, but never heard back from plaintiff." Based on the evidence presented, the magistrate concluded that "this particular records request was responded to appropriately and lawfully."

{¶ 41} Upon review, we find no error by the magistrate in finding that appellant responded appropriately to this request. Under Ohio law, "it is the responsibility of the person who wishes to inspect and/or copy records to identify with reasonable clarity the records at issue." *State ex rel. Fant v. Tober,* 8th Dist. No. 63737 (Apr. 28, 1993). Here, appellant requested "all" discipline and grievance records of "Ken Featherling in his office." In response to appellant's request, BWC informed appellant that BWC Labor Relations Division maintained employee discipline and grievance records, and offered to assist appellant as to any "specific discipline records" request he might have. As noted by the magistrate, however, the agency "never heard back" from appellant. Further, the evidence indicates that Featherling last maintained an "office" with BWC in 2008.[2] Here, the record supports the magistrate's determination that BWC offered to assist appellant with a specific records request, but that appellant did not follow-up with this invitation, nor did he indicate that the agency's response was unsatisfactory. *See, e.g., State ex rel. Zidonis v. Columbus State Community College,* 133 Ohio St.3d 122, 2012-Ohio-4228, ¶ 40 (no error in finding appellee-college complied with R.C. 149.43 where appellant ignored appellee's invitation to refine overbroad requests for records). Upon review, the trial court did not err in overruling appellant's objections with respect to his May 11, 2011 records request.[3]

---

[2] Because appellant did not follow-up with a specific request, we do not address the question of whether BWC or any other public agency violates public records laws by not maintaining records "separately or independently maintained" by an employee who is no longer employed by the agency.

[3] Appellant has filed a motion to strike a paragraph of BWC's brief, as well as certain statements made by counsel for BWC at oral argument. Any such arguments or statements are not dispositive to our decision, and we hereby deny appellant's motion to strike.

{¶ 42} In light of the foregoing, we find the trial court did not err in adopting the decision of the magistrate finding that appellant failed to establish his claims for relief by the requisite evidence. Accordingly, appellant's five assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Motion to strike denied;*
*judgment affirmed.*

DORRIAN and LUPER SCHUSTER, JJ., concur.

_____