| | |
|---|---|
| DOUG HUNTER | Case No. 2012-05479 |
| Plaintiff | Judge Dale A. Crawford |
| v. | <u>DECISION</u> |
| BUREAU OF WORKERS' COMPENSATION | |
| Defendant | |

{¶1} Now before the Court is a Motion for Summary Judgment filed, pursuant to Civ.R. 56, by Defendant, Bureau of Workers' Compensation. Reply briefs have been submitted and reviewed. The Court previously granted Defendant's Motion for Partial Judgment on the Pleadings, dismissing Plaintiff's claim of Wrongful Discharge in Violation of Public Policy. The present motion concerns Plaintiff's remaining claims; 1) reverse race discrimination, pursuant to R.C. 412.02(A) and R.C. 4112.99, and 2) a spoliation claim related to documents allegedly destroyed by Defendant.

## <u>Summary Judgment Standard</u>

{¶2} Under Civ.R. 56(C), summary judgment is proper "if the pleadings, depositions, answer to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Thus, in order to determine whether Defendant is entitled to judgment as a matter of law pursuant to Civ.R. 56(C), the Court must ascertain whether the evidentiary materials presented by Defendant show that there is no genuine issue as to any material fact involved in the case. In making this determination it is necessary to analyze the landmark Ohio Supreme Court decision which addresses the "standards for granting summary judgment when the moving party asserts that the

nonmoving party has no evidence to establish an essential element of the nonmoving party's case." *Dresher v. Burt*, 75 Ohio St.3d 280, 285, 1996-Ohio-107, 662 N.E.2d 264 (1996); *see also Saxton v. Navistar, Inc.*, 2013-Ohio-352, 986 N.E.2d 611 (10th Dist.), ¶ 7.

{¶3} In *Dresher*, the Ohio Supreme Court held:

{¶4} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. * * * [T]he moving party bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case. To accomplish this, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment. * * * The assertion must be backed by some evidence of the type listed in Civ.R. 56(C) which affirmatively shows that the nonmoving party has no evidence to support that party's claims." *Dresher, supra*, at 292-293.

{¶5} In interpreting the United States Supreme Court decision in *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548 (1986), the *Dresher* Court found no express or implied requirement in Civ.R. 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim. *Dresher, supra*, at 291-292. Furthermore, the *Dresher* Court stated that it is not necessary that the nonmoving party produce evidence in a form that would be admissible at trial in order to avoid summary judgment. *Id.* at 289, quoting *Celotex*. In sum, the *Dresher* Court held that the burden on the moving party may be discharged by "showing"–that is, pointing out to the Court– that there is an absence of evidence to support the nonmoving party's case. *Id.*

{¶6} "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied." *Id.* at 293. If the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden as outlined in Civ.R. 56(E):

{¶7} "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon mere allegations or denials of his pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party."

## Reverse Race Discrimination

{¶8} In order to establish a case of reverse race discrimination, where the Defendant discriminates against the majority, Plaintiff must show, 1) background circumstances which establish that BWC was the unusual employer who discriminated against non-minority employees, 2) that BWC took an adverse action with respect to Plaintiff's employment, 3) that Plaintiff was qualified for the position, and 4) that BWC treated Plaintiff disparately than other similarly situated employees. *Pohmer v. JPMorgan Chase Bank, N.A.,* 10th Dist. Franklin No. 14AP-429, 2015-Ohio-1229, ¶ 32, citing *Mowery v. Columbus*, 10th Dist. Franklin No. 05AP-266, 2006-Ohio-1153, ¶ 44. A Plaintiff also has a "heightened" standard necessary to establish a claim of reverse race discrimination. *Mowery,* 2006-Ohio-1153.

{¶9} To be deemed similarly situated, "the comparables must have dealt with the same supervisor, have been subjected to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* at ¶ 35, quoting *Tilley v. Dublin*, 10th Dist. Franklin No. 12AP-998, 2013-Ohio-4930, ¶ 43.

{¶10} If Plaintiff sets forth a prima facie case, then the burden shifts to BWC to articulate a legitimate, non-discriminatory reason for taking the adverse employment action against Plaintiff. *Id.* at ¶ 30. Once BWC establishes a legitimate, non-discriminatory reason, the burden shifts back to Plaintiff to prove that the proffered reason was a mere pretext for the true motive – unlawful discrimination. *Id.* at ¶ 31.

{¶11} To establish pretext, Plaintiff must show that BWC's reasons for the adverse employment action 1) have no basis in fact, 2) did not actually motivate the employer's conduct, or 3) are insufficient to warrant the challenged conduct. *Id.* at ¶ 40, citing *Morissette v. DFS Servs., LLC*, 10th Dist. Franklin no. 12AP-611, 2013-Ohio-4336, ¶ 31.

{¶12} Plaintiff cannot "simply show that the employer's decision was wrong or mistaken, 'since the factual dispute at issue is whether the discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.'" *Kundtz v. AT&T Solutions, Inc.*, 10th Dist. Franklin No. 05AP-1045, 2007-Ohio-1462, ¶ 37, quoting *Fuentes v. Perskie*, 32 F.3d 759, 765 (3rd Cir.1994). "Further it is not the role of the judiciary to 'second guess business judgments by an employer making personnel decisions.'" *Morissette*, 2013-Ohio-4336, ¶ 40, quoting *Manofsky v. Goodyear Tire & Rubber Co.*, 69 Ohio App.3d 663, 669, 591 N.E.2d 752 (9th Dist.1990).

{¶13} BWC asserts that Plaintiff cannot show that it treated similarly situated, minority employees differently than it treated Plaintiff. Plaintiff's claim is based, in part, on the treatment of several African-American employees, including Erik Edwards, Donieta Edwards, Craig Thompson, and Daryl Smith. BWC contends that if these employees were disciplined to a lesser degree than Plaintiff for similar conduct it is due to the disciplinary grid established by BWC's employment policies, wherein employees receive progressively more severe punishment if they violate additional policies while already under suspension. BWC claims that none of the above-mentioned employees had the disciplinary history of Plaintiff, which included a written reprimand in 2008; a three-day suspension in 2009 (reduced to one day after an appeal); and, a five-day suspension in 2010 (reduced to two days after an appeal), prior to his termination. BWC asserts that none of the other employees had two active suspensions at the time of their disciplinary measures. (Nielson Aff., July 13, 2016, ¶ 5, 15). In fact, Bradley Nielson, Labor Relations Officer, employed by BWC, is not aware of any other

employee in the department who has ever had more than two active suspensions at one time.  (Nielson Aff., July 13, 2016, ¶ 15).

{¶14} BWC claims that the legitimate, non-discriminatory reason it terminated Plaintiff's employment was because he 1) failed to properly secure evidence and document case activity, 2) failed to respond truthfully to questions during an investigatory interview, and 3) spent time reviewing the work of other BWC employees without his supervisor's authorization.  BWC asserts that none of the other employees in question were charged with dishonesty. (Nielson Aff., July 13, 2016, ¶ 10). Further, BWC has terminated a minority employee for a single act of dishonesty, after 16 years of service, with no active discipline.  (Nielson Aff., August 2, 2016, ¶ 6).

{¶15} Plaintiff has failed to demonstrate that the stated reasons are pretext.  First, the reasons have a basis in fact; Plaintiff had two active suspensions at the time of his pre-termination transgressions, and Plaintiff was charged with dishonesty.  No other similarly situated, minority employee had two active suspensions, nor did any other employee commit a dishonest act.  The Court has no evidence that these reasons did not actually motivate the BWC's decision to terminate Plaintiff.  Dishonesty alone was sufficient to terminate Plaintiff with or without the compounding disciplinary grid. Essentially, if Plaintiff's claim of reverse discrimination survived summary judgment the Court would be tasked with determining whether Plaintiff was properly disciplined, i.e. whether he should have received two suspensions and whether he should have been terminated for a third violation of policy, which included a charge of dishonesty.  The Court is prohibited from second guessing the business decisions of BWC.  Thus, the Court finds there is no issue of material fact: that while BWC took an adverse action with respect to Plaintiff's employment, there is no evidence to support the claim that BWC is the unusual employer who discriminates against non-minority employees and/or treated Plaintiff disparately than other employees similarly situated.  Defendant's Motion for Summary Judgment as to Plaintiff's reverse race discrimination claim shall be granted.

**Spoliation**

{¶16} In order to establish his spoliation claim, Plaintiff must prove that there was 1) pending or probable litigation involving the plaintiff, 2) knowledge on the part of the defendant that litigation exists or is probable, 3) willfull destruction of evidence by the defendant designed to disrupt plaintiff's case, 4) disruption of plaintiff's case, and 5) damages proximately caused by defendant's acts. *Heimberger v. Zeal Hotal Group, Ltd.*, 2015-Ohio-3845, 42 N.E.3d 323, ¶ 36, citing *White v. Equity, Inc.*, 191 Ohio App.3d 141, 2010-Ohio-4743, 945 N.E.2d 536, ¶ 29 (10th Dist.).

{¶17} There is no recognized cause of action of negligent spoliation of evidence in the State of Ohio. Rather, Ohio only recognizes a cause of action for intentional spoliation of evidence. *Smith v. Howard Johnson Co.,* 67 Ohio St.3d 28, 1993-Ohio-229, 615 N.E.2d 1037. A failure to prove the intentional destruction of evidence is fatal to Plaintiff's claim. *Id.*

{¶18} Plaintiff alleges that his former supervisor, Kenneth Featherling, kept records of BWC's alleged discriminatory practices in his office desk, including a document purportedly used for tracking disparate treatment. BWC provided over 1,000 documents in response to a discovery request from Plaintiff for the Featherling records. Plaintiff claims that the production is suspicious and creates an inference that the BWC destroyed the records. He bases this assertion on the fact that the production does not include anything related to the discipline of a fellow BWC employee, Erik Edwards; and, the fact that the production contains documents dated after the termination of Featherling. BWC contends that all of the records from the office desk of Featherling were produced, and any confusion regarding the dates of material is explained by the fact that a subsequent supervisor added material to Featherling's records. *See* Defendant's Notice of Compliance with Court Entry, filed October 28, 2016; Affidavit of Shawn Fox, ¶ 5. Plaintiff admits that he does not know if the Featherling documents

were destroyed.  (Hunter Depo., pg. 255).  He provides the Court with nothing more than statements of inference and speculation regarding the alleged willful destruction of these documents.  Further, these records were the subject of public records lawsuit, in which the Tenth District Court of Appeals found that Plaintiff failed to properly request the records.  *See Hunter v. Ohio Bur. Of Workers' Comp.*, 10th Dist. Franklin No. 13AP-457, 2014-Ohio-5660, ¶ 41, cert denied 143 Ohio St.3d 1418, 2015-Ohio-2911, 34 N.E.3d 391.

**{¶19}** BWC cannot produce documents which do not exist, and Plaintiff has failed to provide any evidence that the documents in question were intentionally destroyed by BWC.  Therefore, as it relates to the Featherling documents, there is no genuine issue of material fact.

**{¶20}** Plaintiff also claims that BWC destroyed certain handwritten notes that were used during the investigation and interview related to the conduct leading to his termination.  Plaintiff contends that BWC admits that these documents were destroyed.  *See* Plaintiff's Memorandum Contra to Motion for Summary Judgment, Ex. N.  Plaintiff claims that BWC destroyed these documents even though a representative of his union asked that they be preserved.  However, according to Ex. N, the documents were already destroyed prior to the union's request of preservation.  Therefore, destruction itself is not evidence of willfull destruction with the purpose to disrupt Plaintiff's case, especially since the notes were apparently destroyed in accordance with BWC policy. The same holds true for the handwritten notes from the investigation of the Karaoke case (the case in which it was determined that Plaintiff acted dishonestly).  In Ex. O, an email to Plaintiff from BWC legal counsel, BWC asserts that the handwritten notes were destroyed once it was determined that they no longer held any administrative value. There is no indication that the notes were destroyed willfully, only that they were destroyed pursuant to BWC's document retention policies.

**{¶21}** In his Memorandum Contra, Plaintiff makes first mention of emails from Featherling to Beverly Hasty, a BWC employee involved in the Karaoke investigation.

Plaintiff claims that these emails support Plaintiff's claim of reverse race discrimination as they relate to the improper conduct of another, Erik Edwards. Plaintiff claims that he knows that these emails were sent because he was blind-copied and the fact that they were not produced in discovery is evidence that they were destroyed. Plaintiff makes no mention of these emails in his Complaint; and, according to BWC, he did not identify them in response to BWC's discovery requests.

{¶22} Even if Plaintiff could prove that BWC willfully destroyed the Featherling records, the handwritten investigatory notes and/or the Featherling emails, he still cannot prove a prima facie case of spoliation of evidence at trial. As explained herein, there is no evidence to support the claim that BWC treated Plaintiff disparately than his minority co-workers. He cannot show that his case was disrupted and/or that he was proximately damaged by the disruption. Plaintiff was terminated, in part, for dishonesty. Even if the documents in question relate to his alleged dishonesty, the Court will not conduct a trial for the purpose of second-guessing BWC's business decisions. Regarding the alleged records kept by Featherling for the purpose of tracking discriminatory conduct, the Court finds that having said records available would not change the disposition of this case. They would merely serve as potential evidence of reverse discrimination. However, as stated herein, Plaintiff was terminated for his dishonesty, and questioning the application of BWC's disciplinary system to other employees would not change the fact that he had two active suspensions and a charge of dishonest at the time of his termination. Accordingly, there is no issue of material fact regarding Plaintiff's claim for spoliation of evidence. Defendant's Motion for Summary Judgment as to Plaintiff's spoliation of evidence claim shall be granted.

_____
DALE A. CRAWFORD
Judge

[Cite as *Hunter v. Bur. of Workers' Comp.*, 2016-Ohio-8577.]

| | |
|---|---|
| DOUG HUNTER | Case No. 2012-05479 |
| Plaintiff | Judge Dale A. Crawford |
| v. | <u>JUDGMENT ENTRY</u> |
| BUREAU OF WORKERS' COMPENSATION | |
| Defendant | |

{¶23} A non-oral hearing was conducted in this case upon Defendant's Motion for Summary Judgment. For the reasons set forth in the decision filed concurrently herewith, Defendant's motion for summary judgment is GRANTED and judgment is rendered in favor of Defendant. All previously scheduled events are VACATED. Court costs are assessed against plaintiffs. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
DALE A. CRAWFORD
Judge

cc:

Dianne D. Einstein
615 Copeland Mill Road, Suite 1H
Westerville, Ohio 43081

Timothy M. Miller
Velda K. Hofacker
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

**Filed December 14, 2016**
**Sent to S.C. Reporter 1/10/17**